I'm sorry, I have a profound hearing loss in my left ear and there's a little bit of volume that comes through But what does is distorted and in a marble room like this is very hard. So please bear with me. Thank you I Simply want to address the district court's decision It was an oral decision from the bench which made it a little confusing and difficult to understand exactly what the grounds were On the cross motions for summary judgment, but let me address what I understood and what has been briefed as the primary arguments The first issue was that the district court ruled that the evidence about mr Howie and what happened to him at the jail upon his release was not admissible His basis for doing that was the settlement agreement. Mr Howie entered into with a prior defendant and this isn't a prior case There is no Confidential provision in that settlement agreement. There's no prohibition whatsoever on mr Howie speaking about what happened to him or even the terms of his agreement So there's nothing in the original settlement agreement for mr Howie that prevented him from speaking or testifying in any subsequent proceeding his Evidence was is extremely germane to That mr. Peterson and established a clear pattern of policy failures under Manel So Somewhat different from your case, excuse me, don't you find the facts of Howie? somewhat different from your case They are even more egregious both are egregious I don't know how he was remarkably egregious and callous but then why is it relevant under Monel to warn the Municipal authorities Well, it's relevant for Two reasons number one it establishes that there's been a policy failures. There's been a policy Omissions and and what was the policy failure in Howie? And what was the policy failure in your case? Thank you. I understand your question. Now. They're both the same policy failure. The policy failures are Get my glasses getting old The policy failures were There was no written policy For checking on inmates at the time of their release for their medical condition I was there's nothing that the Nevada County Sheriff's Office did didn't they have a checklist? They had a document. It was actually appeared on a computer screen like a 3x5 card and had a little box. It said medical and this is where the case becomes very odd the Jail officer who I took the deposition I've testified that when they saw that screen they would call the head of the well path medical in-house medical provider and asked him if the inmate was fit for medical release and They asked the officer. What was your understanding? Was that mental health relief physical fitness or physical fitness? What was it? He said it was physical fitness. I Staff there at the hospital saying when you got a phone call from the jail officer and booking about the inmate release What were they asking you about when they asked you about whether or not the inmate was? Medically fit for release and they said it had nothing to do with physical Health of the inmate it only had to do with whether or not the inmate was on a 5150 hold Two opposite ends of the spectrum in addition I took the depositions of Multiple nurses that work for well path. This is where the case gets even more interesting and more egregious All of the well path nurses I took the deposition of basically said if the jail Booking officer called up and said an inmates being released That was it. It didn't matter what physical condition the inmate was in they were getting released period But I mean, I guess I don't understand legally What to do with the implication of your argument I mean here the inmate was released because the district attorney decided not to press charges So there's no reason to hold this person in Custody and so the implication of your argument is nonetheless We're gonna keep the person in jail if they've got a medical situation happening No, no, not at all If you read through their brief we make it very clear what the policy failures were Nevada County needs to follow certain very simple minimal procedures to make sure that the inmate upon release is physically fit to walk out the door and The case of mr. Howie he was crippled in him with a fractured knee They rolled him out of a in a wheelchair and made him crawl out onto the curb. Mr. Peterson was limping badly has severe bacterial infection cellulitis He was in terrible pain Fever redness, he couldn't really walk and they did nothing to check his physical health. They just let him out the back door He he was had bacteremia at the time. He was released He stumbled about a mile to a gas station and collapsed and was taken to Nevada County Memorial Hospital Where he was immediately diagnosed with bacteremia and sepsis His physically walking from the back of the jail that gas station put his life in serious Let me ask you this if if Your case were to go to trial. Yes on this money elf on the Monell theory. Yes what Be your theory that you would advance to the district court Well, we we advance the theories that there's a Monell violation on by by omission fair to have appropriate policies practices and procedures And what policies and procedures should the county have had I list them in my brief? Let me listen to you here number one There was an inappropriate policy for checking on the medical fitness of an inmate at the time of release That little three by five car that appeared on a screen just said a box medical Clearly was inadequate because that that that was an affirmative policy Of sorts, but it was inadequate. There was an omission because it doesn't ask whether or not the inmate may need A wheelchair or crutches They have an ambulatory problems Do they have discharge instructions has the well path medical given them discharge instructions where they're to go immediately to a hospital or there? To be transported home and have bed rest. There's no discharge instructions given and they don't check on that They don't check and see whether or not the inmate has having their medical care Transferred to another qualified medical provider It is a it is a it is a malpractice for a medical provider to not transfer Medical care to another medical provider when there's a serious medical condition Well path had the obligation to transfer that care and the Vatican sheriff's has the obligation to make sure that whatever paperwork or transfers are required by medical or Aren't those arguments that you would make against well path and well path isn't in this case because they filed for bankruptcy It's against well path and it's against the sheriff's office the sheriff's office needs to see what is the status as inmate? When they're brought to the booking counter to be released, and they don't do anything Does your claim office it are you as you're not as I gather you're then you're not asserting a failure to train claim well, I This there is a failure to train claim because I'm sorry there is a failure to train in the sense that There is no coordination between well path policies and but the Nevada County Sheriff had in other words they don't Have any training sessions where the two of them sit down together as teams and say, okay when inmates released Here's what we're going to do and not do and here's how to handle someone who has a serious infection or has a ambulatory problem There's no coordination There's no training and clearly there was no training or supervision because the jail booking officer says I Just have to call up and see if he's physically fit that they say yes out the door the inmate goes Well, that says no that checkbox has nothing to do with physical fitness That's for a 5150 hold and then the nurses for well path kept saying it didn't matter what the situation was They got released out the door period whenever they got the call to release an inmate with regard to an inmate who an inmate with a medical condition who doesn't want to be transferred to another medical provider or doesn't want Any ambulatory care you can just sign a waiver Sheriff's County Sheriff and and the well path provider off the hook But you need to ask someone who's been ill and known to be ill and having a serious medical problem before they leave the jail Do they have you discharge instructions? Do you have transport home? Do you need transport to medical facility? These are simple basic things. It takes about one minute Two minutes to go through the paperwork and ask the questions instead. Mr. Peterson Who is in the medical rocket it's noted limping badly Is walked a couple hundred feet from a cell to booking? Can't miss Olympian. He's walked through the booking office, which I've been in many times You can't miss someone coming from the cells to booking if they're limping badly. He gets his clothing things back He's got to go into a room and change. He has to come back. Let me ask you You cannot miss his physical condition judge Forrest asked you about the other case, what was it called? What was Howie Howie Howie case yes, do you need to prove your claim that there is a Failure of policy Do you need the Howie evidence to prove that claim or do you only need it for? failure to train to show a pattern Again I think the case is important because it establishes the jury the fact that there were no policies in the beginning of 2018 when the Howie incident occurred and they've made no changes It took no corrective action and by September 2018 when the Peterson incident occurred Nothing had happened nothing no difference Yes, it is possible under the single instance rule Which I cite in my brief just simply have a single instance as a basis for a Manel claim, but I think this case Argues strongly that the Howie evidence comes in because it shows the pattern in practice. It shows the mindset The mindset of these people was it didn't matter what physical conditions were these people these inmates rent the release moment or at least time came and that day out they went I mean, I understand the The logic of your argument and even the You know, these are very difficult stories to hear about what happened with these inmates both in Howie and in this case The problem is the legal standard that you have to work with is deliberate indifference So much of what you've been describing might very well rise to medical malpractice But deliberate indifference is something more than that So in the Howie case where the allegations were that jail staff Basically beat the guy up and broke his leg and then dumped him on the curb That seems like more than medical malpractice that seems like you know something intentional Whereas here the guy gets released because no charges are filed against him and he goes to the desk to be To be processed out of the jail, and he doesn't say My leg is really hurting and I can't walk and please help me. He doesn't say anything at all He takes his discharge and he walks out the jail And so in that context, maybe they could have followed up and asked more questions But why isn't that medical malpractice if anything and not deliberate indifference? Well, it's deliberate indifference for because let's take a look at the Russell case Get to that the District Court did not like the Russell decision I don't know why because it incorporated the Gordon decision, which is what the district court was very fond of They had the same holdings. The Russell decision is later decision by this court and The the Russell court has a couple of very important quotes a Plaintiff does not have to prove a complete failure to provide medical assistance to demonstrate the care of the unconstitutional rather a plaintiff should provide a plaintiff needs to Prove deliberate difference by showing that there was a failure to provide medical treatment with a speed and medical competence required by the particular medical condition Here the situation is mr. Peterson cannot get medical care As soon as the jail officers say you're released well path terminates his services and there's the the jailer has an obligation to make sure that if Continuing medical care, which is urgently needed for mr. Beeson is required then it gets transferred What knowledge did the jailer have that Peterson needed medical care when Peterson wanted to exit the make the jail? What knowledge did he have? I'm pardon me. Can you repeat I couldn't hear what knowledge did the jailer have when he allowed Peterson to walk out the door? Peterson needed medical care. It was very clear that he was limping the officer said that's not what the jailer said I know but my client said just the opposite. We have a factual determination for a jury This is the most classic factual question for Jeremy. I've ever seen we have this party saying no, they had to see me I was limping like this And I have to walk hundreds of feet It's all on video at the booking officer watches and he walks around to and from the desk and he tries to get out the big Door and the jailer says nah, I didn't see anything That's this question for a jury Let me ask you so a minute ago. You referred to you said that the district court seemed to like Gordon Yes, is that correct? discordant How much does Gordon? Play in this case what I think it's important for more for the medical well path side, but you do have to show Deliberate indifference when you have a Monell claim by a mission So we do have a deliberate difference to meet here, but it isn't didn't Gordon deal with an individual Yes, it was not a Monell claim it's not a Monell claim. I don't believe it was a Monell case. That's my memory All right, it wasn't and Russell however was a more recent decision that incorporated Gordon spoke about it went through his holding Adopted it and then Expounded upon what is the standard for deliberate difference? It's not a it's Russell really helps clarify. What is or is not a medical pure medical practice malpractice issue Versus what's deliberate indifference here? The jail knows that Inmates become seriously ill at times It knows it has hundreds of inmates every year some of them get very sick It needs to have policies and practices to make sure that when an inmate is being released and they know they've been The jail knows mr. Peterson was seriously ill because they keep walking them to and from the medical office for two days They escort him each time from his cells to medical and back. They know he's lumping They know counsel you've gone over time. I think we understand your argument. I'll give you a brief amount of time for rebuttal I'm done your honor any further questions. I appreciate your time today. Thank you. Thank you  Good morning, your honors and may it please the court My name is Matt gross and I represent the appellee the County of Nevada The essence of appellants case boils down to correctional officers at the Wayne Brown Correctional facility the Nevada County Jail should have noticed that because mr. Peterson was limping there was an underlying serious bacterial infection and that his medical condition required Necessitating additional questions at his release and providing additional care including transportation to a local hospital or holding him over Longer the excerpts of records show that appellants claim fails for seven important facts now. Mr. Peterson's Out of the case, right? Mr. Peterson, yeah He's the well these the Helen no, but let me ask you that the Kate the only claim here that I understand is a Monell claim Correct a Monell and a conspiracy claim, right? But it really we're only talking about a Monell claim Yeah, is that correct? Yes. So how do How let me ask you this. How does Gordon and the way in which you evaluate an individual claim of medical? Indifference To this claim the Monell claim One of the elements to show a Monell claim is that there has to be a underlying constitutional violation and I think this is where Gordon comes into play a little bit is showing that we need to show an underlying was there a deliberate indifference to medical care by the county or by any of its Unnamed correctional officers here and there's no evidence to show that there was that underlying deliberate indifference to medical care at best It's maybe a negligence or medical malpractice claim against well path It's certainly not a deliberate indifference of medical care or showing a Monell claim for the county Mr. Peterson as the court noted doesn't request any help as he's being Discharged and released from the jail. He doesn't request any medical assistance He doesn't request transportation to another hospital or jail facility Or additional medical care in essence, he doesn't request ambulatory devices such as crutches or a Wheelchair to assist with the release It's also noted correctional officers don't have access to mr. Peterson's medical records under HIPAA they have to rely on the medical staff and so that's where the county has a process of as my Counsel noted there's a hard card that the county does when it's releasing an inmate and one of those boxes beyond Let's make sure we return property to the inmate. Let's make sure that they have all of their belongings is a medical check to make sure that they're medically cleared to be released from the facility because Correctional side doesn't have access to those records. And so that involves calling someone from medical to see All right. Is this person medically clear? But it's also noted in the record correctional officers have the ability to if they notice something in front of them That's apparent an inmate has a serious injury. They're bleeding They have something that a nurse or other medical provider couldn't see on the phone. They can then say All right, can we have more evaluation? None of that happened in this case? So I just want to understand how you evaluate his or how you look at plaintiff's theory The case which is that So what we have in front of us Only is a man out. Well, I Understand put aside that conspiracy claim, but we have a man now claim that the county had a policy maybe practice of Not providing or not making and not determining whether or not somebody was capable of being released from the jail because of medical conditions and That policy was the cause Resulted in the constitutional violation That is that the way you understand plaintiff's theory. Yes and so one of those things in looking at the Monell claim of is there a Custom practice or policy as we look at are there other cases that are showing this is either a written policy that's happening of proverbially patient dumping out of the jail or is this the Unspoken custom that is occurring in the jail and the the only evidence as the court noted is the Howie case which is Substantially different than our case here. Mr. Howie alleged that he was Assaulted by correctional officers that he requested medical attention that was denied In fact that he was so significantly injured. He was wheeled out of the jail in a wheelchair Dumped onto the curb and then had to crawl into a cab where he then the cab driver noticed your medical condition is serious Let's call the fire department That is Substantially different than mr. Peterson here who was able to walk on his own a mile to a nearby gas station Was able to exit the jail on his own who never made those requests for medical For medical help, but also importantly, mr. Peterson was seen nine times in the brief 48 hours He was in the jail in the cases that I'm sure the court is aware when we're looking at deliberate indifference We're looking at cases where an inmate needs medical assistance and they're ignored by the jailers. They're ignored by the medical staff here Mr. Peterson is seen by registered nurses by physicians assistants By nurse practitioners over nine times they are working up. Mr. Peterson's complaints of I have pain in my leg Mr. Peterson testified that there was redness in his leg that was being tracked by well path X-rays were ordered there was an ordered place for an MD a doctor to evaluate. Mr Peterson, but that unfortunately didn't happen because the 48 hours had Already arrived and so Here well path is consistently treating and continuing to further Mr. Peterson's medical care But the officer sees him limp according to the plaintiff According to the video and doesn't ask him. Are you all right? Do you need a cane? Do you need some help? I? Don't think that's mr. Peterson states that it would have been obvious to anyone that his limp That he was limping and that that was a serious medical condition and the other correctional officers stated We just don't recall if he was limping or not, but it's also on that state effects You know, why couldn't a jury believe the plaintiff's version of that that it was obvious that I was in distress Because also, mr. Peterson was noted as coming in limping into the jail. And so there the limping is not a Serious enough condition or should have been something attributed to a Condition or something that occurred inside the jail because mr. Peterson was already limping as regardless whether Occurred inside the jail. That's irrelevant. The question was his medical condition so clear that he needs some intervention by the police Yeah, and and so looking at it To have the Monell claim we need to have the underlying Constitutional violation and if we use Gordon as part of our reference here one of the first elements that the district court noted was Under Gordon the county needs to make an intentional decision with respect to the condition under which mr Peterson is confined including decisions with respect to his medical treatment and here there's no intentional decisions because at best maybe the county is Subjectively aware that mr. Peterson has a limp but doesn't know if that's How he walks if that's there's a bacterial infection or just this is how mr Peterson is and walks and isn't a serious medical need and so there isn't that intentional decision And so that's that's one of the core facts that the district court relied on and looking at Gordon to show. We're not There's nothing that would have put the correctional officers on notice that we're aware that mr Peterson needs assistance that this limping is somehow underlying it you need to be taken to the emergency room for treatment Unlike Howie where mr. Howie? Alleged he couldn't even physically walk So let's switch gears just slightly and just for purposes of this question Assume that we think there's a question of fact on whether a constitutional violation occurred what do we do with the argument that your friend across the aisle made in terms of There's a disconnect between the medical staff and the and the Prisoner staff about what medical check even means when you're when you're releasing somebody are we checking about physical condition? Are we checking about you know mental condition? Are you a threat to yourself or others or something? Because I assume like the point of even asking the question or having that check box on the form, maybe you could tell me My assumption would be that the purpose of that was would be to just sort of make sure that this guy is good to put On the street both for physical and mental health reasons But if there is a disconnect between the two people checking in on that point then That that purpose is not being served And I think this is where my council has a slight misunderstanding that there isn't a disconnect here And so what well path staff the nurses were testifying to is we couldn't prevent the 48-hour like we couldn't stop Mr. Peterson from being released because we were running into penal code 825 849 he needs to be released and so what they're talking about is we couldn't prevent the Physical release from his jail, but well path still has the ability to say if mr Peterson needs additional care from checking his medical chart We can send him to the local hospital for further care. We can send him to another facility so that he's not under a State hold, but he's still receiving that medical care. And so that's where the Well path the medical staff they're looking in the chart and that's part of the determination Yeah, but we're in this case. We're trying to figure out whether the jail whether the county is liable and whether they have a policy that basically thwarts The purpose of this process of checking the the well-being of a person before putting them out on the street and And most of the comments that you're making are about whether well path is doing a good job or not And so I'm trying to think on the county side like what do we have to say that the county is? Knows that this is not working right and is doing and set it up this way anyways Well, I I think the county knows that this is working right because we see a lack of other Policy practice or custom cases cited in here beyond Howie as being the only other one of evidence of this patient dumping that's occurring at Wayne Brown Correctional Facility And so the county has also set up a the system of the booking officer Contacts the officer in charge or sergeant in the jail facility to confirm does this Does this inmate match on the list of someone who we can release? Then afterwards decide All right We need to make contact with the medical provider to also confirm that this person is safe to be released And so that's where they have these systems in place If the county didn't have a system like that, then maybe that might be evidence of showing. All right, there is a Potential constitutional issue that's happening here The county is purposely avoiding contacting its medical contractor to make sure inmates are safe to be put back onto the street But that's not the case here because the county has that policy in place Has it also formally in a hard card sheet as this is done for every single inmate? And then those are reflected both in several of the county's policies But numerous of well past policies as the contractor that has the more specific I just want to briefly Address that because Because mr. Peterson entered the jail with a limp failed to inform any of its jail officers of his medical condition The jail officers were told that mr. Peterson was cleared for release These are not the actions of negligence or alternatively negligently being unaware of mr. Peterson's met Medical condition and certainly there's no evidence that they acted with reckless disregard One of the elements to finding that there is a underlying Monell claim and if the court doesn't have any other questions Let me ask you this Is it always the case that in a Monell claim such as the one we have here that there must that that the plaintiff must prevail against the individual officers on a In order to establish a Monell claim to go forward with a Monell claim in other words if they can't prevail against the individual officers They can't prevail on the Monell claim No, because Monell is asserted is the way for a 1983 claim to be asserted against the entity, right But it still requires in any Monell analysis. If we're looking at failure to train ratification Custom policy or practice we have to look at what is the underlying? Constitutional violation here and and the way this complaint in this case has been framed is as being a deliberate indifference of medical care That's where the briefing that the deposition and stuff have occurred here I Think as I have articulated in in the briefs there are substantial evidence to also show that there was a custom of Having this release process for the jail of confirming that mr. Peterson could be medically cleared for release the county has its policies Its medical provider certainly has even more detailed policies Okay, hope that answers the court's question, okay, thank you. Thank you counsel. Thank you Mr.. Dwyer, did you want a minute for rebuttal? I think this case is a classic case that belongs in front of a jury there are real questions of fact My client will testify that when he went into booking to get released The officer told him he asked if he could make a phone call and the officer said make it snappy He will testify that the officer was Kurt was was Kurt and short with him and the clearly the message was get your rear out the door mr. Peterson and that's what you'll testify about and And then with regard to the the policies is important to note and I think of page 54 of my brief There's a footnote about what policies Nevada County actually has in place It mistakenly and I corrected the record the there were no Policies and practices in place at 2018 when this occurred they made a subsequent change in their policy directives Which are beneficial still not enough, but they did make improvements, but that was after these events I refer you to I think it's a footnote page 54. Thank you. Thank you counsel All right the matter of Peterson versus, Nevada County is submitted and we thank counsel for their argument today
judges: PAEZ, BEA, FORREST